# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LORA VUOTTO, individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | 10 C 7255 |
| v. | ) ) | Judge Ronald A. Guzmán |
| ABBOTT LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Lora Vuotto has sued Abbott Laboratories, Inc. ("Abbott") on behalf of herself and others similarly situated alleging that the contamination of Abbott's Similac infant formula makes Abbott liable for negligence, strict liability, intentional misrepresentation, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose and unjust enrichment. Before the Court is Abbott's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons provided herein, the Court grants the motion.

## Facts

Vuotto, a Pennsylvania resident,[1] bought a container of Abbott's Similac Go & Grow formula powder, and she fed the entire can to her daughter before she learned that Similac had recalled the lot of formula including the container she had purchased. (Am. Compl. ¶¶ 7, 9.) Abbott recalled the product following an internal quality review that detected the remote

---
[1]The parties agree, and the Court holds, that because all of the relevant events occurred in Pennsylvania, Pennsylvania law governs Vuotto's claims in this diversity case.

possibility of the presence of a small common beetle in the product produced in one production area in Abbott's Sturgis, Michigan manufacturing facility. (*Id.* ¶ 19.) The Food and Drug Administration ("FDA") determined that while the formula containing the beetles posed no immediate health risk, there was a possibility that infants who consumed formula containing the beetles or their larvae, could experience symptoms of gastrointestinal discomfort and refusal to eat as a result of small insect parts irritating the GI tract. (*Id.*) The Department of Health and Human Services ("HHS") reported that, as early as January 2007, there were numerous instances of beetle infestation at Abbott's Sturgis facility. (*Id.* ¶ 22.) Abbott received complaints in July and August 2010 from two consumers that the Similac products they had purchased contained insects. (*Id.*) Abbott issued the recall on September 22, 2010. (*Id.* ¶ 18.)

Abbott's marketing of Similac included the following statements: (1) "A baby's first year is so important, so count on Similac for nutrition you can trust."; (2) "When it comes to the science of nutrition, Similac stands apart."; (3) "We hold to a higher standard when it comes to infant nutrition. Similac formulas have been developed with leading scientists and more than 280 clinical studies."; (4) "Nutrition for a Strong Start - The right nutrition can make a big difference in your baby's first year. When you choose Similac Advance, you're giving your baby the patented nutrient bled in EarlyShield for immune support, brain and eye development and strong bones."; and (5) "You can trust Similac Sensitive to provide a strong start for your baby's developing digestive system." (*Id.* ¶ 17.) Vuotto alleges that these were misrepresentations concerning the safety of Similac products for ingestion by infant children and that she relied on these statements in purchasing Similac products. (*Id.* ¶ 60.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations in the complaint, drawing all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint should give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true . . . state a claim to relief that is plausible on its face" and raise the possibility of relief above the "speculative level." *Id.* at 555, 570.

**Strict Liability, Negligence, Negligent Misrepresentation and Intentional Misrepresentation Claims (Counts I- IV)**

Abbott argues that Vuotto's strict liability, negligence, negligent misrepresentation and intentional misrepresentation claims are barred by Pennsylvania's economic loss doctrine. Vuotto concedes that she merely seeks economic damages for purchasing Abbott's recalled Similac product. (Pl.'s Resp. Br. 1.) However, she argues that her claims fall under an exception to Pennsylvania's economic loss doctrine. The Court disagrees.

Under Pennsylvania law, "[t]he economic loss doctrine bars recovery for the plaintiff when a claim is brought in tort (strict liability or negligence) but no physical injury exists, and the only damage is to the product itself." *Repasky v. Jeld-Wen Inc.,* No. 06-S-717, 2006 WL 4663416, at *498 (Pa. Com. Pl. Dec. 29, 2006) (citing *N.Y. State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925-26 (Pa. Super. Ct. 1989)). "The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear

boundaries between tort and contract law." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675 (3d Cir. 2002). "The only exception to the economic loss doctrine is for claims brought against 'a design professional' or someone else who is 'in the business of providing information to others.'" *Duquesne Light Co. v. Pa. Am. Water Co.*, 850 A.2d 701, 703 (Pa. Super. Ct. 2004) (quoting *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 286-87 (Pa. 2005)).

There has been a split of authority among Pennsylvania lower courts regarding whether the economic loss doctrine applies to intentional fraud or misrepresentation claims. *KNK Med.- Dental Specialties, Ltd. v. Tamex Corp.*, Nos. Civ. A. 99–3409, 99-5265, 2000 WL 1470665, at *5 (E.D. Pa. Sept. 28, 2000). However, the Third Circuit analyzed the split in authority as well as persuasive authority from other jurisdictions and predicted that the Pennsylvania Supreme Court would hold that the economic loss doctrine applies to intentional torts for purely economic loss when the alleged misrepresentation relates to the quality or characteristics of the goods sold. *Werwinski*, 286 F.3d at 675; *see Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 188 n.26 (Pa. Super. Ct. 1999) (stating that the economic loss doctrine "bar[s] a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or his property"). This Court finds the Third Circuit's analysis of the law persuasive and agrees that when faced with two competing interpretations of Pennsylvania law, courts should "opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." *Id.* at 680.

In this case, Vuotto concedes that she seeks recovery for purely economic loss and her claims are based on alleged misrepresentations relating to the quality or characteristics of the

Similac that Abbott sold. Further, she has not alleged that she received poor professional advice from an entity in the business of providing information to others, such as an architect, engineer or design professional. Thus, the Court holds that the economic loss doctrine applies and its exception is inapplicable. Accordingly, the Court grants Abbott's motion to dismiss Vuotto's strict liability, negligence, negligent misrepresentation and intentional misrepresentation claims and dismisses these claims with prejudice.

**Breach of Express Warranty and Implied Warranties of Merchantability and Fitness for a Particular Purpose (Counts V, VI and VII)**

In Count V, Vuotto alleges breach of express warranty based on Abbott's representations that its Similac products were safe for ingestion by infants and contained "clinically proven ingredients." (Am. Compl. ¶¶ 62-64.) In Count VI, she alleges breach of implied warranty of merchantability based on Abbott's implied warranties that its Similac infant formula was of merchantable quality and was fit, safe and in proper condition for the ordinary and particular purpose for which the infant formula was designed and sold, *i.e.*, ingestion by infants. (*Id.* ¶ 71.) In Count VII, Vuotto alleges breach of implied warranty of fitness for a particular purpose based on Abbott's representations that Similac products were fit for infant consumption and contained ingredients safe for infants to consume. (*Id.* ¶ 79.)

Vuotto has not alleged that the Similac Go & Grow formula powder that she purchased contained beetle parts. She concedes that it did not cause any physical injury to her daughter and merely alleges that the product she purchased was among those recalled. Vuotto alleges that Abbott recalled the product following an internal quality review that detected the remote possibility of the presence of a small common beetle in the product produced in one production

area in Abbott's Sturgis, Michigan manufacturing facility. (*Id.* ¶ 19.) Based on her own allegations, the complaint does not raise the possibility of relief above the speculative level. In short, she has not sufficiently alleged any breach of warranty because she has not alleged that the Similac product she purchased was defective.

Further, 13 Pennsylvania Consolidated Statutes § 2607(c)(1) provides that when the buyer alleges a breach of warranty related to a product that has been accepted by the buyer, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy." Pennsylvania courts have held that the buyer must provide the seller with actual and affirmative notice even when the seller may have had actual or constructive knowledge of the breach. *See Am. Fed'n of State Cnty. & Mun. Emps. v. Ortho-McNeil-Janssen Pharm., Inc.*, No. No. 08-cv-5904, 2010 WL 891150, at *6 (E.D. Pa. Mar. 11, 2010) (dismissing breach of express and implied warranty claims on Rule 12(b)(6) motion). A plaintiff must, at minimum, allege that he or she provided defendant with "reasonable notification in order to state a viable claim for recovery." *Id. Cf. Vanalt Elec. Constr. Inc. v. Selco Mfg. Corp.*, 233 Fed. Appx. 105, 111 (3rd Cir. 2007) ("[R]easonable notification is a condition precedent to recovery, and, therefore, the claimant has the burden of pleading compliance with Section 2607(c)'s requirements.") This is because "the purpose of notification under § 2607(c) is to allow the seller an opportunity to resolve the dispute regarding an alleged breach before the buyer initiates a lawsuit." *Am. Fed'n*, 2010 WL 891150, at *6. Therefore, even assuming that Abbott was aware that the Similac product Vuotto purchased was defective, Abbott may not have been aware of her intent to file a class action lawsuit and was denied the chance to negotiate or settle this claim prior to the filing of this case. Therefore, the Court dismisses Counts V, VI and VII without prejudice.

**Unjust Enrichment**

In Count VIII, Vuotto alleges that Abbott has been unjustly enriched due to its sale of contaminated Similac products. To plead unjust enrichment, the plaintiff must allege: "(1) a benefit conferred upon one party by another, (2) appreciation of the benefit by the recipient, and (3) acceptance and retention of the benefit under circumstances that would make it inequitable or unjust for the recipient to retain the benefit without payment of value." *Am. Fed'n*, 2010 WL 891150, at *7. Under Pennsylvania law, "[a]n unjust enrichment claim is subject to the 'basic tenet of equity jurisprudence' that 'if an adequate remedy at law exists, equitable relief will not be granted.'" *Fish Net, Inc. v. ProfitCenter Software, Inc.*, No. Civ. Action 09-5466, 2011 WL 1235204, at *9 (E.D. Pa. Mar. 31, 2011) (quoting *Goadby v. Phila. Elec. Co.*, 639 F.2d 117, 122 (3d Cir. 1981)). "Adequacy of the remedy is determined by availability, not by likelihood of success on the merits." *Id.*; *see Willing v. Mazzocone*, 393 A.2d 1155, 1158 (Pa. 1978).

Vuotto has failed to plead an unjust enrichment claim because she has not adequately alleged beyond a speculative level that the Similac product she purchased contained insects or larvae or was otherwise defective. Accordingly, she has failed to allege sufficiently that Abbott unjustly benefitted from her purchase of the Similac product. Having admitted that she suffered solely economic damages, Vuotto retains an adequate remedy at law that includes Abbott's offer to compensate her for the recalled Similac product that she purchased, and she has not alleged that she is unable to obtain a refund from Abbott. (*See* Am. Compl. ¶ 88.)

**Conclusion**

For the reasons provided herein, the Court grants Abbott's motion to dismiss the amended complaint [doc. no. 29]. Counts I-IV are dismissed with prejudice and Counts V-VIII are dismissed without prejudice. Plaintiff is given fourteen days to file a second amended complaint that cures the deficiencies outlined herein keeping in mind her obligations under Rule 11. If plaintiff fails to do so, the Court shall dismiss her individual claims with prejudice with the understanding that she no longer seeks to pursue them.

**SO ORDERED**  ENTERED: August 31, 2011

_____
**HON. RONALD A. GUZMAN**
**United States Judge**